UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED ___ ENTERED
LOGGED ___ RECEIVED

APR 2 0 2020

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

UNITED STATES OF AMERICA, )
            Plaintiff, )
)
v. )    Criminal No. 1:18-cr-00018-CCB
)
)
RYAN FARACE, )
            Defendant. )

## EMERGENCY MOTION FOR COMPASSIONATE RELEASE

Ryan Farace ("Farace") asks the Court to exercise its authority under 18

U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, and order that he

be immediately released from the Bureau of Prisons (FCI Petersburg) in light of

emergency conditions created by the COVID-19 pandemic.[1] The unprecedented

threat of COVID-19 could not have been foreseen at sentencing and poses an

extraordinary threat to Mr. Farace's health. The virus thrives in densely packed

populations, and as multiple media accounts have revealed, facilities maintained by

the BOP are ill-equipped to contain the pandemic and prevent COVID-19 from

becoming a de facto death sentence for Mr. Farace. Mr. Farace has served more

than 2 years for non-violent drug and money laundering offenses and has less than

2 years remaining on his sentence.[2] Allowing Mr. Farace to finish out the remainder

of his sentence at home is the only prudent response to the compelling and

---

[1] Mr. Farace also invokes the Coronavirus, Aid, Relief, and Security Act (CARES Act), 18 U.S.C. § 4205(g), H.R. 748 § 6002 at Div. B, Tit. II, Sec. 12003(b)(2), as a basis for granting this request for compassionate relief. The CARES Act grants the Attorney General broad discretion, during the COVID-19 pandemic to transfer individuals threatened such as Mr. Farace to home confinement. *Id.*

[2] *See* https://www.bop.gov/inmateloc/ (the BOP's official website currently lists Mr. Farace's outdate as March 28, 2022).

extraordinary circumstances created by the novel coronavirus. Moreover, Mr.
Farace has a safe place to live in Maryland, where he will have the best opportunity
of surviving this pandemic. His low custody rating—which will be reduced to
*minimum* within the next few days—reveal that he poses no threat to the
community and is clearly suitable for home detention followed by a period of
supervised release.

Mr. Farace has a loving and stable family who has expressed a willingness
and desire to accept him back into their lives.[3] His parents own a large home and
have offered to provide Mr. Farace with a place to live, to provide transit to and
from work, to cover the cost of electronic monitoring if necessary.[4] The Court can
expect that Mr. Farace will attend substance abuse treatment and be wholly
compliant with home detention and all other conditions of release. *See* Farace
Letter.[5]

**INTRODUCTION**

You are likely reading this Petition from self-isolation in your home. Now
imagine if someone sick with COVID-19 came into your home and sealed the doors
and windows behind them. That is precisely what will happen to the 863
individuals confined at Petersburg federal prison once a COVID-19 outbreak occurs.
Social distancing will impossible and no one detained will be allowed to leave.

---

[3] *See* Letter of Joseph Farace (outlining Ryan's release plan and support network, which includes
substance abuse counseling). As retired therapists, Farace's parents are uniquely situated to ensure that his
treatment needs are met. *Id.*
[4] Farace's parents reside at: 3 William Court – Sparks, MD 21152. *Id.*
[5] Farace's thoughtful letter to the Warden of FCI Petersburg has been attached hereto as an exhibit.

We are in the midst of the most significant pandemic in generations. On

March 11, 2020, the World Health Organization ("WHO") classified COVID-19 as a

pandemic, and on March 13, 2020, President Donald Trump declared the pandemic

to constitute a national emergency.[6] According to the CDC, people who suffer from

underlying medical conditions are at higher risk of getting very sick from COVID-

19.[7] As of now, there is no known treatment and a vaccine is, at a minimum, many

months away.

Many states, including Maryland and Virginia, have implemented measures

to release hundreds of low risk inmates.[8] The BOP has acknowledged that the risks

of the rapid transmission of contagion in the tight quarters of prisons and jails

present significant challenges to keeping inmates and staff safe and healthy.[9]

Farace, like all people in prison, lives, works, eats, studies, and recreates within

congregate environments, heightening the potential for COVID-19 to spread once

introduced.

There are countless opportunities for COVID-19 to be introduced into a

prison, including daily staff ingress and egress, transfer of incarcerated/detained

---

[6] *See Coronavirus: COVID-19 Is Now Officially A Pandemic, WHO Says*, NPR (Mar. 11, 2020), https://www.npr.org/sections/goatsandsoda/2020/03/11/814474930/coronavirus-covid-19-is-now-officially-a-pandemic-who-says; *Trump Declares Coronavirus National Emergency, Says He Will Most Likely Be Tested*, Reuters (Mar. 13, 2020), https://www.reuters.com/article/us-health-coronavirus-usa-emergency/trump-declares-coronavirus-national-emergency-says-he-will-most-likely-be-tested-idUSKBN2102G3.

[7] *See Are You at Higher Risk for Severe Illness?*, CDC.gov, https://www.cdc.gov/coronavirus/2019-ncov/specific- groups/high-risk-complications.html.

[8] *See, e.g., US Jails Begin Releasing Prisoners to Stem Covid-19 Infections*, BBC.com (Mar. 19, 2020), https://www.bbc.com/news/world-us-canada-51947802.

[9] *See* Fed. Bureau of Prisons, Program Statement 6190.04: Infectious Disease Management (2014), *available at* https://www.bop.gov/policy/progstat/6190_004.pdf.

persons between facilities and systems, to court appearances, and to outside medical visits; and visits from legal representatives. Lastly, inmates lack the ability to exercise disease prevention measures. Living conditions do not allow for them to care for themselves with frequent handwashing and practicing social distancing.[10]

The first mass COVID-19 outbreak at a federal corrections facility occurred in late March, 2020 at FCI Oakdale in Western Louisiana, resulting in, at least, 30 confirmed cases.[11] FCI Oakdale also experienced the first inmate fatality from COVID-19, a 49-year-old male.[12] There have been several more deaths at Oakdale since.

FCI Elkton is also an epicenter of yet another COVID-19 outbreak. "Three inmates have died from coronavirus and more are being placed on ventilators by the day."[13] BOP officials have utterly failed to take necessary precautions to curb the spread. *Id.* Conditions are only getting worse and it's only a matter of time until other facilities like Petersburg experience similar outbreaks and deaths directly attributable to poor living conditions and overcrowding. Lest there be any doubt,

---

[10]   *See* Joseph A. Bick (2007). *Infection Control in Jails and Prisons, Clinical Infectious Diseases* 45(8):1047-1055, at https://academic.oup.com/cid/article/45/8/1047/344842 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment, rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise")

[11]   *See An Explosion of coronavirus cases cripples a federal prison in Louisiana*, Washington Post.com (March 29, 2020), https://www.washingtonpost.com/national/an-explosion-of-coronavirus-cases-cripples-a-federal-prision-in-louisiana.

[12]   *Id.*
[13]   *See* https://abcnews.go.com/Health/bureau-prisons-coronavirus-response-fire-reactive-proactive-inmates/story?id=70063263.

there have already been 13 inmate deaths and the number of those infected—staff

and inmates alike—increases daily.[14]

According to public health experts, incarcerated individuals "are at special

risk of infection, given their living situations," and such individuals "may also be

less able to participate in proactive measures to keep themselves safe;" "infection

control is challenging in these settings."[15] Members of the United States Senate and

House of Representatives, recognizing that federal prisons are at extreme risk of

becoming "epicenters of the COVID-19 pandemic," have urged the BOP and the

DOJ to reduce prison populations in order to curb potential outbreaks.[16]

Mr. Farace suffers from severe long-term urological problems that have been

documented by officials at Petersburg, yet remain undiagnosed. In spite of his

condition being documented, however, officials have done very little in the way of

providing effective treatment. He fears that without protective measures being

taken as those requested herein, his life is at substantial risk of immanent peril.

One in five who contract COVID-19 and require hospitalization are young

adults.[17] For

---

[14] *See https://www.bop.gov/coronavirus/.*

[15] *See* Achieving a Fair and Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States (Mar. 2, 2020), https://law.yale.edu/sites/default/area/center/ghjp/documents/final_covid-19_letter_from_public_health_ and_legal_experts.pdf.

[16] *See, e.g.,* Letter from U.S. Senator Kamala D. Harris to Director of the BOP (Mar. 19, 2020), *available at* https://www.harris.senate.gov/imo/media/doc/Harris%20Letter%20to%20Carvajal%20(3.19).pdf; Letter from U.S. Congresswoman Karen Bass to Attorney General William P. Barr (Mar. 19, 2020), *available at* https://judiciary.house.gov/uploadedfiles/2020-03-19_letter_to_ag_barr_re_covid19.pdf.

[17] *See* https://www.minnpost.com/second-opinion/2020/03/1-in-5-americans-hospitalized-with-covid-19-

are-young-adults-cdc-study-finds/.

this reason, he urges the Court to immediately reduce his sentence to a term of
home confinement and period of supervised release.

**I. Under the First Step Act, this Court has Broad Authority to Determine
Whether Extraordinary and Compelling Circumstances Exist to Modify
Mr. Farace's Sentence and Release Him to Home Confinement.**

District courts across the country have recognized that ordering release or
home confinement pursuant to 18 U.S.C. § 3582 is an appropriate and important
remedy when an inmate is faced with continued incarceration during this public
health crisis. *See United States v. Muniz*, No. 09-cr-199 (S.D. Tex. Mar. 30, 2020)
(Dkt. No. 578) (releasing defendant serving 188-month sentence for drug conspiracy
in light of vulnerability to COVID-19: "[W]hile the Court is aware of the measures
taken by the Federal Bureau of Prisons, news reports of the virus's spread in
detention centers within the United States and beyond our borders in China and
Iran demonstrate that individuals housed within our prison systems nonetheless
remain particularly vulnerable to infection."); *United States v. Williams*, No. 04-cr-
95 (N.D. Fla. April 1, 2020) (Dkt. No. 91) (granting § 3582(c)(1)(A)(i) motion "in
light of [the defendant's] serious deterioration in physical health and the increasing
health risks that the current global pandemic of coronavirus (COVID-19) poses to
incarcerated persons, particularly those with underlying health
conditions."); *United States v. Gonzales*, No. 18-cr-0232, 2020 WL 1536155 (E.D.
Wash. Mar. 31, 2020) ("Defendant is the most susceptible to the devastating effects
of COVID-19. She is in the most susceptible age category (over 60 years of age) and
her COPD and emphysema make her particularly vulnerable . . . The Court was

7

aware of Defendant's underlying medical condition and took that into consideration at the time of sentencing. In normal times, Defendant's condition would be manageable. These are not normal times, however."); *United States v. Marin*, No. 15-cr-252, (E.D.N.Y. Mar. 30, 2020) (Dkt. No. 1326) (granting § 3582(c)(1)(A)(i) motion based on defendant's "advanced age, significantly deteriorating health, elevated risk of dire health consequences due to the current COVID-19 outbreak, status as a non-violent offender, and service of 80% of his original sentence."); *United States v. Powell*, No. 94-cr-00316 (D.D.C. Mar. 28, 2020) (granting § 3582(c)(1)(A)(i) motion in light of COVID-19 pandemic for a "[d]efendant [who] is 55-years-old, suffers from several respiratory problems (including sleep apnea and asthma), and has only 3 months remaining on his 262-month sentence."); *United States v. Campagna*, No. 16-cr-78-01, 2020 WL 1489829 (S.D.N.Y. Mar. 27, 2020) ("Defendant's compromised immune system, taken in concert with the COVID-19 public health crisis, constitutes an extraordinary and compelling reason to modify to Defendant's sentence ........").

Mr. Farace urges the Court to use the examples above—along with the obvious threat posed to those incarcerated by COVID-19—for the purpose of acting on this Emergency Motion for Compassionate Release.

**A.   The unprecedented nature of this emergency compels the Court to find the exhaustion requirement waived.**

Mr. Farace has already contacted the Warden at FCI Petersburg this week regarding release on home detention. *See* Letter of Ryan Farace. In spite of the

grave threat posed to Mr. Farace in light of COVID-19, no type of action has been taken. Although typically the defendant is required to exhaust administrative remedies with the Bureau of Prisons, courts have recognized that the exhaustion requirement may be waived given the extreme immediacy of the need to seek judicial relief in these circumstances. *See United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732 (D. Conn. Apr. 8, 2020); *United States v. Brannan*, No. 4:15-CR-80-01 (SD Tx. Apr. 2, 2020) (emergency motion pursuant to § 3582 granted on same day of filing for prisoner who had not exhausted BOP remedies); *United States v. Perez*, No. 17-Cr-513-3 (AT) (SDNY Apr. 1, 2020) (waiving the "30-day lapsing" requirement based on the determination that, for the defendant, "remaining incarcerated for even a few weeks increases the risk that he will contract COVID-19," and so "requiring exhaustion ... would be directly contrary to the purpose of identifying and releasing individuals whose circumstances are 'extraordinary and compelling'").

Simply put, forcing Mr. Farace to wait for the administrative process to play out prior to ruling on this request could mean the difference between life and death. The BOP already has provided its "expert" input on such requests: its "COVID-19 Action Plan" lacks any consideration whatsoever of compassionate release. *See* Federal Bureau of Prisons COVID-19 Action Plan, available at https://www.bop.gov/resources/news/20200313_covid-19.jsp. Thus, it would be futile to force defendants to exhaust their administrative remedies—at the cost of their health and, potentially, their lives. As discussed below, it is only a matter of

time before COVID-19 spreads like wildfire in the prisons. As one Court held on

March 19th:

> The Court is glad to hear that there are
> currently no reported cases of COVID-19 at
> Maguire but is unsure what that means if
> people are not being tested. And, as the
> [prison's] management plan itself
> acknowledges, symptoms of COVID-19 can
> begin to appear 2-14 days after exposure, so
> screening people based on observable
> symptoms is just a game of catch up. That's
> why the Bay Area is on lockdown. We don't
> know who's infected. Accordingly, the
> government's suggestion that Toledo should
> wait until there is a confirmed outbreak of
> COVID-19 in Maguire before seeking release,
> *see* ECF No. 113 at 6 ("If the situation with
> respect to COVID-19 at Maguire changes,
> Toledo is free to seek reconsideration of the
> issue at that point."), is impractical. By then
> may be too late.

*In the Matter of the Extradition of Alejandro Toledo Manrique*, 2020 WL 1307109, at

*1, 19- MJ-71055 (MAG) (TSH) (N.D. Cal., Mar. 19, 2020).

With the speed and unpredictability of this pandemic, waiting even thirty

days will be too late. Accordingly, this Court should exercise jurisdiction over Mr.

Farace's emergency motion for compassionate release and dispense with the BOP

requirements under 18 U.S.C. § 3582(c)(1)(A)(i).

### B.   "Extraordinary and compelling reasons" warrant a reduction in Mr. Farace's sentence.

Pursuant to 18 U.S.C. § 3582, a court may modify a term of imprisonment

where "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C.

§ 3582(c)(1)(A). The U.S Sentencing Commission has defined "extraordinary and compelling reasons" in the U.S. Sentencing Guideline § 1B1.13, comment, note 1. Extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13, comment n.1(A)(ii).

Mr. Farace meets this definition of extraordinary and compelling circumstances by establishing an imminent threat posed by higher rates of contracting COVID-19 at Petersburg than he would experience if he were permitted to self-quarantine at home. Unsanitary living conditions, overcrowding, and an already overburdened prison health care system therefore constitute the type of "extraordinary and compelling circumstances" which warrant his release to home confinement and a term of supervised release. This is especially so since Mr. Farace now has less than 2 years to serve before completing his sentence.

In addition, U.S.S.G. § 1B1.13 comment. n.1(D) authorizes release based on "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." Mr. Farace's release is also warranted for additional reasons combined with his medical conditions described above. Conditions at throughout the BOP are deteriorating rapidly, requiring the presence of National Guard at various locations, and the widespread nature of the outbreak is nothing short of extraordinary. By the Bureau's own assessment, Mr. Farace poses a low

risk if released to home detention. Therefore, pursuant to 18 U.S.C. § 3852 and U.S.S.G. § 1B1.13, comment n.1, Mr. Farace presents "extraordinary and compelling reasons" that warrant his immediate release to home confinement followed by a period of supervised release.

When deciding a motion for compassionate release, the U.S. Sentencing Guidelines also instruct the Court to consider the sentencing factors set forth in 18 U.S.C. § 3553(a). Upon considering the grounds identified immediately above, the § 3553(a) factors clearly support the relief requested here. Mr. Farace has atoned for the harm he's caused and has had ample time to reflect on the importance of leading a law-abiding life.[18] Significantly, Farace recognizes the need for ongoing substance abuse treatment as part of being successful and avoiding negative influences which led to his present incarceration.[19]

Finally, when considering a compassionate release request, the Court must also find that a sentence reduction is "consistent with applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The requirement that the sentence reduction be consistent with U.S. Sentencing Commission policy "is essentially already met if 'extraordinary and compelling reasons' exist as defined by that policy." *United States v. Ebbers*, No. 02 Cr. 11443, 2020 WL 91399, at *6 (S.D.N.Y. Jan. 8, 2020). "The only remaining consideration is the policy statement's requirement that the "defendant is not a danger to the safety of any other person or to the community." *Id.*

---

[18] *See* Ryan Farace Letter.
[19] *Id.*

Here, as described above, Mr. Farace meets the definition of extraordinary and compelling circumstances as provided by the Guidelines due the unprecedented health crisis raging in America's prisons. Thus, the Court must next consider whether Mr. Farace is a danger to the safety of others. Simply stated, he is not. Farace currently enjoys a designation of LOW custody by the Bureau of Prisons. Once officials verify Mr. Farace's high school diploma—a process that's already underway—his custody rating will be reduced to MINIMUM.[20] The BOP's assessment in this regard should be entitled to significant weight and suggest he poses no danger to the community or others.

BOP has publicly prioritized release for those with MINIMUM security designation. [21] Yet, the Bureau has one again failed to take action necessary to avert this ongoing human rights disaster.[22] As such, the Court should consider the BOP's prioritization of home detention for MINIMUM security offenders as evidence that Mr. Farace is suitable for compassionate release.

---

[20] Mr. Farace currently has 13 classification points. Yet, that number will be reduced to 11 once officials verify his high school diploma. *See* Bureau of Prisons Program Statement 5100.08, *Inmate Security Designation and Custody Classification* (recognizing that a score of 11 reflects MINIMUM custody for male offenders and that a two-point reduction will be awarded upon verifying Farace's high school Diploma). Given the urgency of this situation, Mr. Farace has attached a copy of his diploma for purposes of the Court's review and to establish that he should be currently classified as a MINIMUM-security offender and considered for immediate release.

[21] https://www.forbes.com/sites/walterpavlo/2020/04/11/bureau-of-prisons-moving-minimum-security-inmates-to-isolation-for-release-preparation/#58cd77b44ca6.

[22] https://www.forbes.com/sites/walterpavlo/2020/04/14/bureau-of-prisons-implements-phase-six-action-plan-no-mention-of-inmate-releases/#23502c4833b5.

## CONCLUSION

For the foregoing reasons, Farace respectfully requests that the Court modify his sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and release him to home confinement and a period of supervised release.

Dated: April 15, 2020

Respectfully,

_Joseph Farace, POA for Ryan Farace_
Ryan Farace
Reg. No. 63661-037
FCI Petersburg Low
1100 River Road
Hopewell, VA 23860

## CERTFICATE OF SERVICE

I hereby certify that I have placed a true and correct copy of the foregoing with first class postage prepaid and properly addressed to the following on this 15th day of April, 2020:

U.S. Attorney's Office
District of Maryland
36 S Charles Street
Baltimore, MD 21201

_Joseph Farace, POA for Ryan Farace_
Ryan Farace